Good morning, Your Honors. May it please the Court. My name is Molly Carlin. I'm an assistant federal public defender in the District of Arizona, and I represent the appellant, Mr. Roger Helm. Speak right up. Thank you. I'd like to reserve three minutes. Now, for crimes he committed as a 14-year-old child, Roger received an aggregate sentence that the state court accepted condemns him to die in prison without a meaningful opportunity for release. Now, he received a sentence based not on consideration of whether his individual adolescent brain had the ability to grow and change, but rather after the state put on undisputed evidence that it would never allow him that opportunity. Now, that sentence is both governed by and falls afoul of Miller. Now, under this court's decision in Moore, an aggregate consecutive sentence that exceeds a petitioner's life expectancy in the juvenile context is the same thing as a sentence of life without parole, and the court held that that was clearly established. Because we have the life sentence only had 25 that was mandatory before parole, and then the two 21-year terms each had 14 years before you'd hit parole, so that's what 14 and 14 is 28 plus 25 is 53, and then they said there's like a three and a half year credit, so we're down to under 50. That's not his life expectancy. It's well under his life expectancy. Well, that's a question of state court accepted that his sentence would be, would enable release at age 81. That's not open for this court to reconsider. I mean, the best example, it's it's clear in the state decision that they didn't know about the parole possibility on the 21-year sentences, but so it's your position we have to blind our eyes to that even though it seems clear that that is the case under Arizona law? Yes, Judge Collins, and the best example of that is if you look at footnote 2 in Miller. In Miller, the state court treated the sentence as mandatory. Then in the federal court, in the Supreme Court, the state argued that actually under state law the sentence was discretionary, and the Supreme Court rejected that argument saying we're going to defer to the state court on questions of state law. We are not going to reconsider the state's argument here that in fact the sentence was discretionary. We know that the state, the state court didn't decide the issue the other way. It just said that it was not happened to be in the record. The separate writing from the separate justice actually made that point that the record didn't say, but it might be Well, I'll make two points of response to that. One, in Miller, what footnote 2 says is the state court treated the sentence as mandatory. So it doesn't actually talk about whether whether that was litigated, but the state court treated it as mandatory and therefore this court, the Supreme Court, would accept that. As mandatory, then you get 42 plus 25, you have 67. Is that now at the life expectancy? Well, the state court here treated the sentence as 25 plus 21 plus 21, which gets us to 67. Yes, 25 plus 42. Oh, sorry, plus 16, which was the age at which he was. The state court accepted that he, my math is not great, but the parole at the earliest at age 81. And the state court also accepted that. Now, Moore was an 81. It was well over 100, wasn't it? That's true. However, the state court also accepted that 81 was, the state court also treated 81 as equivalent to a sentence of, or as they treated it as he would not have the opportunity for release within his expected lifetime, and so that also falls under Miller footnote 2. So what about, I mean, because it would be a different ground, I suppose we'd have to consider the issue de novo, but could, what about the argument that it's clear from the record that this was discretionary? It wasn't mandatory that the sentencing judge stack the sentences in this way. The sentencing judge made an assessment and determination that state law didn't require him to make that he was going to stack these in this take this out of Miller? Well, Judge Collins, the best reading, and this court is looking at that question de novo, the best reading of Miller is that a discretionary sentence can violate Miller when the sentencer is, does not or cannot consider a relevant mitigating factor. And you can see this in Judge Sotomayor and Breyer's concurrence in Miller. They actually say that if the sentencing judge on remand does not consider a particular factor that would violate Miller, and on that remand the sentence would be discretionary. Likewise, I think... What is the factor that's not being considered, that was not available to be considered by the trial judge? Well, the question of whether he could be rehabilitated was really obscured by the fact that the state insisted he could not be rehabilitated. But that doesn't mean the judge didn't consider it. You're just talking about the relative positions of the parties, but what is the, where is there in any indication that the sentencing judge said, well, I can't, I can't even address this question. I mean, I'm not allowed to, for whatever reason, like, this factor can't come into play. You're just telling me what their respective parties argued. Why is that a factor you say he was precluded from considering? He or she, I don't know. Well, you know, not really. I wouldn't say that the respective parties argued that. I would say it was undisputed that he, it was effectively undisputed that he would not receive treatment. The evidence was undisputed. It was also undisputed that he needed treatment. And so the state stood there and said. On that point, doesn't, in the record, it looked like the, he's not currently incarcerated in Arizona anymore, right? Right. So in the discussion was what Arizona was able to provide. Is it a given that there could be no rehabilitative services in any place that he might be incarcerated? I mean, you're assuming that this, or the state is saying, are you telling me, there's no way under any scenario he's going to get any rehabilitative services? I'm not sure I understand the question, but what I'm arguing is not that the state is. Okay, then go back in. This factor that the sentencing judge was precluded under your construct from considering, what is that factor again? The judge couldn't, in reality, consider whether he would be rehabilitated, whether he would be rehabilitated, because the state said, we will not allow it. So it's as if the state had a statute that said, we will never permit rehabilitation for mentally ill defendants who need rehabilitation. So rehabilitation couldn't really be considered. When a judge is considering rehabilitation, the purpose of that is, can this person grow and change over this period of time so that they can be rehabilitated? The other focus of the sentencing hearing was public safety. It was not deterrence. It was not retribution and whether he deserved the sentence. It was whether the public would be safe after so many years. And in fact, Dr. Cantor said that his overriding concern was public safety. And that was also the judge's concern when he particularly brought up Dr. Bendheim's report and said, you know, I don't know what to do here. I see that even Dr. Bendheim, who's one of the most favorable reports for your client, says that, you know, he could be rehabilitated with treatment, but you're telling me that there is going to be no treatment. Counsel for the defendant, what evidence is there that there's going to be any treatment? And counsel said, well, you know, I hope maybe Arizona would would give him something. And so the judge could not consider the the judge didn't consider it. I mean, you're saying there were constraints on articulated on whether or not that mitigating factor could have been available, but it's, you're saying somehow the trial court said, like, we just, I'm not even gonna go there because I can't consider it. I think what I'm saying is the judge couldn't consider it. It sounded like he wanted to consider it. He, yes, he made clear that he wanted to consider it and said that because that was the whole focus of the hearing. Could he and would he be rehabilitated? And what he ultimately says after conducting this four-day hearing is he acknowledges the age is a mitigating factor and then he says the defendant is extremely dangerous and potentially a violent person and not subject to and the defendant is an extreme danger to society. That doesn't sound like, you know, well, this, the state says they won't do anything. It sounds like he, this was his assessment after hearing all this testimony over those four days. It was not disputed that Roger was a danger to society at the moment that he stood before the court. It was also not disputed that if he got no treatment, he would be a danger to society for the rest of his life. The key question was whether he could be rehabilitated with treatment. He said his conclusion was that he's not subject to rehabilitation. That seems like a determination, a discretionary determination on the issues that he didn't consider. In the context of the hearing, given that it was all focused on whether he could be rehabilitated and whether he would in practice have that opportunity, it can only be understood as there won't be any rehabilitation. He's not going to be rehabilitated, period. Not because he can't be, but because he won't be. And he won't be, not because of his individual characteristics, but because the state will not allow it. That doesn't sound like that's what the sentencing judge said. In the sentencing record, does the state sentencing judge at any point say, well, there are no rehabilitative services available to this guy, so I'm going to stack these sentences? Well, the judge makes clear that he understands that there are no rehabilitative services available. Defense counsel concedes that. He does make the determination that the individual is a member of society and unlikely to be rehabilitated, correct? Yes, but it was also disputed that he was unlikely to be rehabilitated. In fact, that he would not be rehabilitated because the state said, we are not going to allow him to rehabilitate. We will just incarcerate him. So it's not any different than if the state passed a statute saying, we will not rehabilitate anyone who needs rehabilitation in order to, we will not allow, we will not enable rehabilitation for any mentally ill defendants. Do you want to save some time for rebuttal? Oh, yes, I would. Thank you. We'll hear now from Mr. Ball. Good morning, and may it please the court, my name is Casey Ball, assistant attorney general here on behalf of the respondents. This court should affirm the district court's denial of habeas relief because the state court's decision was not contrary to or an unreasonable application of clearly established federal law. Can I ask you to raise the voice level? Yes, sorry, I'll stand closer to the microphone too. There is no clearly established federal law holding that aggregate sentences can violate the Eighth Amendment. It's just because they're lengthy in nature, particularly for a juvenile homicide offender. Instead, Helm relies on an amalgam of Ninth Circuit case law and Supreme Court case law to fashion a rule that no matter how many homicides you commit, you can't get consecutive sentences that exceed a life expectancy. It's clear after Miller and Graham that the Supreme Court has said you can't give a juvenile offender what we call LWOP, life without the possibility of parole. Have they ever considered a case like this where the aggregate sentence arguably extends beyond the individual's life expectancy? No, and that's that's really what makes this different here. The Supreme Court hasn't considered the consecutive versus concurrent nature of sentences. In Miller, the defendants, both of them had... Didn't we in Moore in the non-homicide context address that issue? Yes, in Moore this court found that a 254 year sentence was the functional equivalent of an LWOP for a non-homicide offender. Moore is distinguishable for a number of reasons. Primarily, it's a non-homicide juvenile offender. Here, Helm has committed three homicides and Graham drew a bright line distinction between homicide and non-homicide offenses. But even assuming we could cobble together Moore, Graham, and Miller to fashion a rule that consecutive sentences result in LWOP for homicide juvenile offenders, Helm still can't get around the discretionary nature of these sentences. On that issue, would we have to review that de novo because it wasn't reached by the state court? The discretionary... In other words, if we were to reach the issue and say that Miller and Moore are all ultimately distinguishable because here when you're when you're dealing with murder or with homicide, the rule is that it can't be non-discretionary and the record shows it clearly was discretionary and therefore it's distinguishable. That whole argument would have to be reviewed de novo, would it not? Yes. It's not subject to epidepherence because it's not what the state court said. Yeah, the Court of Appeals addressed it in terms of Miller and Graham don't apply to consecutive sentences. And so even under a de novo review though, Miller's mandate is that it has to be a discretionary sentencing scheme. But you do concede that if we would dispose of the case on that ground it would have to be under a de novo review? Yes, though the result would not change. Miller very clearly requires a discretionary sentencing scheme. We have that here. That was why we had a four-day hearing on sentencing for mitigating and aggravating circumstances was so that the court could determine not only the length of the sentences on the counts 1, 2, and 4, but also whether they would be concurrent or consecutive. And the court ultimately in its discretion imposed a mix of concurrent and consecutive sentences. He got three consecutive sentences and count 4 was concurrent to count 3. So what is your availability of parole on the two 21-year sentences? It's right in the sentencing minute entry and the sentencing transcript. I don't think Helms should be able to profit from injecting error in the post-conviction relief proceedings by artificially inflating the nature of a sentence. When we're talking about eligibility for parole, we're talking about the the earliest possibility. Is this an issue of fact that's presumed correct under the statute? Can it be established that it's by clear and convincing evidence that it's wrong or is it something else? Yeah, if it isn't, I think it isn't a question of fact. It really didn't turn, is a question of fact. It didn't really turn the court's decision because the court was focused on consecutive versus concurrent at the state level. But we have the sentencing transcript. I'd turn the court's attention to 1 ER 78 where the court says as to counts 1, 2, and 4, on each of those counts, it is the judgment and sentence of the court that the defendant be imprisoned on each of those three counts for the maximum term of 21 years, not to be eligible for suspension, commutation, parole, or release on any other basis until two-thirds of each of these sentences is served. It's right there in the sentencing transcript. This is his sentence. Helm does not dispute my math. Instead, he seeks to profit from artificially inflating when he's actually eligible for release. He's eligible for release at the time of 49 and a half years based on the 25 years on the first screen murder, the 14 on counts 1 and 2. If we were to treat this as a question of fact and conclude based on the sentencing transcript that the appellate courts got this wrong and therefore we don't have to defer to their finding, does that then undo epidefference to the determinations because it's based on a mistake of fact? Not as to the determination that consecutive sentences are not implicated by Graham and Miller because that doesn't turn on how long his sentence is. Additionally, the error inerred to his benefit at the court of appeals level and they still did not grant relief on it. So, correcting the for release, even if it unlocked an over-review for purposes of determining whether this is in fact equivalent to an LWAT, it won't change the result on habeas review. As to whether the court actually had discretion, Helm tries to speculate that the court must have thought its hands were tied that Helm could not be rehabilitated because the state speculated, well, we don't have the resources later to rehabilitate someone as far gone as Helm. The evidence at the mitigation and aggravation was that Helm was going to be really difficult to rehabilitate, if not impossible. One of the therapists suggested, hey, this is one where I'd say maybe we pass on him. He was incredibly dangerous and the court was obviously concerned about that and it's why the court, in its discretion, chose to impose consecutive sentences on counts 1, 2, and 3. However, the court exercised its discretion in determining whether count 4 would be consecutive or concurrent, chose a concurrent sentence, and explicitly considered his age as a mitigating circumstance. That's on 1 ER 76. The court says, asked counts 1, 2, and 4, the court finds the following mitigating circumstances. The defendant's age of 14 years 11 months at the time of committing these crimes. As the Supreme Court recently clarified in Jones, that's all that's necessary. The court considered youth as a mitigating circumstance. We have a discretionary sentencing scheme that allows the court to decide both the length of years on counts 1 and 2 and whether they'll run consecutive or concurrent. Under Jones, that is all that is constitutionally required and is constitutionally sufficient in order to take this out of a Miller claim. And unless this court has other questions, all right, the respondents respectfully request that this court affirm the district court's denial of habeas relief. Thank you. Miller is about process. Miller says that the sentencer must consider not just the defendant's youth, but the sentencer must consider and must actually consider his capacity for rehabilitation. The judge didn't speculate. What the judge did here with the information about whether he could or could not be rehabilitated is pure speculation. We don't know what the judge would have done if he was just told, look, we don't know if he can be rehabilitated, but it is possible. That is what he was told. He was told if he got treatment, it is possible he could be rehabilitated. But he won't be because we won't let him. And so at the end of the day, we're purely speculating as to what the judge would have done. Roger was denied the process that he was entitled to. The process was individualized consideration of him, not what the state would allow based on its policy considerations. And so what we would be doing would be letting the state decide whether a juvenile should be released based on his future dangerousness, not letting the judge decide whether the individual had the personal capacity to do so. And whether the state had resources or not was not speculation. It was undisputed that the state would not allow him resources ever. Now we're not artificially inflating the sentence. The dissent in the State Court of Appeals noted that there was not enough information in the record to decide this two-thirds question. And in fact, if you go back to the record, the state did not even argue in the State Court of Appeals. I see that my time is up. All right. I thank you, counsel. Thank you. I think we have the arguments. I appreciate the arguments of counsel for both sides. In the case of Helm versus Shim will be submitted for decision.
judges: HAWKINS, COLLINS, Seeborg